**In re Joseph JEBBIA, Relator.**

No. 14–00–00547–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 14, 2000.

Christopher D. Wilsher, Houston, TX, for relator.

Jerry Fazio, Dallas, TX, for respondents.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON and FROST.

## OPINION

MAURICE E. AMIDEI, Justice.

In this original proceeding, Relator, Joseph Jebbia, seeks a writ of mandamus ordering the respondent, Judge David M. Medina, to vacate his order of February 18, 2000, compelling arbitration. We agree with the Relator that a writ of mandamus is warranted.

### I.

### FACTUAL SUMMARY

Joseph Jebbia alleges he was working for Consolidated Tex–Pack, Inc. when a co-worker operating a forklift caused a buoy to fall off of a pallet, injuring Jebbia's foot. In a summary proceeding to compel arbitration, Tex–Pack filed an affidavit by Charles Abbott, its Director of Safety and Loss Prevention. Abbott states in paragraph eight of his affidavit:

> Tex–Pack Express, L.P. d/b/a Consolidated Tex–Pack is engaged in interstate commerce, and the [arbitration] agreement substantially affects such commerce. The General Partner of Tex–Pack Express, L.P. is Tex. Pack, Inc., whose principal place of business is in Santa Fe Spring, California. Tex–Pack interlines with other companies around the United States to provide carrier and distribution services throughout the state of Texas. Tex–Pack Express, L.P. also delivers throughout Oklahoma and New Mexico through Beaver Express, a subsidiary of Western Parcel Express, of which Tex–Pack Express, L.P. is also

a subsidiary. Joseph Jebbia's employment relationship with Consolidated Tex–Pack as a dock worker involved the interstate commerce described above.

Jebbia's affidavit states:

> On March 18, 1999, I was employed by CONSOLIDATED TEX–PACK, INC. I drove a truck for CONSOLIDATED TEX–PACK, INC. My job duties were to load freight onto my truck and make deliveries and pickups. Some of the deliveries were for goods that we received from outside the State of Texas. Some of the pick ups would eventually end up going out of the State of Texas. CONSOLIDATED TEX–PACK, INC. was in the trucking business and transported goods for other people and businesses both inside the State of Texas sand outside the State. CONSOLIDATED TEX–PACK, INC. was not in the business of manufacturing or sale of goods; it only transported goods owned by other persons.

Tex–Pack filed a copy of the agreement, entitled, "Arbitration Policy and Agreement." The agreement states in part:

> Employee and Consolidated Tex–Pack agree that any legal or equitable or other claim or dispute arising out of or in connection with the application and/or inception of employment, the termination of employment, or any other matter relating to the employment of the Employee by Consolidated Tex–Pack, will be resolved by binding arbitration."

The arbitration agreement concludes, "The decision and any award shall be final and binding on both parties ... I have read this agreement. I understand it, and I accept it as a condition of my employment."

## III.

## STANDARDS OF REVIEW

### A. Mandamus Principles

■ Mandamus relief is available if the trial court abuses its discretion, and there is no other adequate remedy at law. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). When alleging that a trial court abused its discretion in its resolution of factual issues, the party must show the trial court could reasonably have reached only one decision. *Id.* at 918. As to determination of legal principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *See Walker,* 827 S.W.2d at 840.

■ In determining whether the writ should issue, we must further determine whether the party has an adequate remedy by appeal. *Id.* Mandamus is intended to be an extraordinary remedy, only available in limited circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989).

■■ A remedy normally is not inadequate merely because the party may incur more expense and delay than in obtaining an extraordinary writ. *See Walker,* 827 S.W.2d at 842. Absent an arbitration agreement covering the dispute, parties have a right, enforceable by mandamus, to go forward with litigation without delaying for arbitration. *See Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994). On the other hand, where there is an arbitration agreement, the benefit of the bargain is the right to avoid the expense and delay of litigation by arbitrating. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex. 1992). Therefore, mandamus will issue to protect that right. *Id.*

### B. Summary Judgment Standards Applicable To A Motion To Compel Arbitration

■ A summary motion to compel arbitration is essentially a motion for par-

tial summary judgment, subject to the same evidentiary standards. No presumption of arbitrability arises until the court has found there is an enforceable arbitration agreement. *See, e.g., Brozo v. Shearson Lehman Hutton, Inc.,* 865 S.W.2d 509, 511 (Tex.App.—Corpus Christi 1993, no writ) ("Our task, then, is to construe all evidence, reasonable inferences, and doubt against the judgment of the trial court, which had construed every reasonable presumption in favor of the arbitration award."). To compel arbitration on a summary motion, a trial court must first determine as a matter of law that the parties have agreed to arbitrate. *Jack B. Anglin Co.,* 842 S.W.2d at 269.

 The party alleging an arbitration agreement must present complete summary proof of his "case in chief" that an agreement to arbitrate requires arbitration of the issues in dispute. *Id.* If that summary proof intrinsically raises issues about the procedural enforceability of the agreement, the movant's summary proof should include any evidence that resolves those issues without creating an issue of material fact. *See Weekley Homes, Inc. v. Jennings,* 936 S.W.2d 16, 18 (Tex.App.—San Antonio 1996, writ denied). Naturally, the non-movant, to resist summary arbitration, needs only to raise an issue of material fact about a necessary element of its opponent's "case in chief" or present some evidence supporting every element of a defensive claim that there is no enforceable agreement to arbitrate. *See Henry v. Gonzalez,* 18 S.W.3d 684, 692 (Tex.App.—San Antonio 2000, no pet. hist.) (consol. orig. proceeding & appeal) (cross-movant failed to show the absence of any issue of material fact, and failed to show he was entitled to declaratory judgment as a matter of law, while opponent showed right to arbitration as a matter of law).

 If the movant has proven there is an arbitration agreement, as a matter of law, the court must compel arbitration, and a presumption arises that all disputed issues between the parties must be arbitrat-

ed. *See Weekley Homes,* 936 S.W.2d at 18. If issues of material fact remain about whether there is an enforceable agreement to arbitrate, the trial court must promptly allow the party claiming the right to arbitrate an evidentiary hearing on the matter.

## III.

## ANALYSIS

### A. Employment at Will

 Jebbia claims the arbitration agreement is unenforceable because an employment at-will relationship is not a binding contract on either the employee or the employer. The Texas Supreme Court has explained that employer-employee contracts can be formed, as long as they do not limit the parties' ability to terminate the employment at will:

> [A]t-will employment does not preclude the formation of other contracts between employer and employee. At-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at-will. Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment.

*Light v. Centel Cellular Co. of Texas,* 883 S.W.2d 642, 644 (Tex.1994).

 The Texas Supreme Court seems to accord as much protection to the right to litigate as the right to arbitrate:

> In *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992), we held that a party denied its contractual right of arbitration under the Federal Act has no adequate remedy by appeal and may seek review by mandamus. We reasoned that the party, being required to resolve its dispute by litigation, has lost its bargained-for right to arbitration. Likewise, a party who is compelled to arbitrate without having agreed to do so will have *lost its right to have the dis-*

pute *resolved by litigation.* Accordingly, such a party has no adequate remedy by appeal.

*Freis,* 877 S.W.2d at 284 (emphasis added). The mutual promises to give up the right to litigate can therefore constitute the consideration supporting the agreement to arbitrate. *In re Alamo Lumber Co.,* 23 S.W.3d 577, 579–80 (Tex.App.—San Antonio 2000, no pet. hist.) ("Since the parties surrendered their rights to trial by jury, these mutual promises supply valid consideration."). The language of the arbitration agreement clearly indicates it is binding upon both parties. *See Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388 (Tex. App.—Houston [14th Dist.] 1998, writ dism'd w.o.j.). The arbitration agreement also states that Jebbia accepts the obligation to arbitrate as a condition of his employment. As the Texas Supreme Court explained in *Hathaway v. General Mills, Inc.:*

> Generally, when the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes *as a matter of law.* Thus, to prove a modification of an at-will employment contract, the party asserting the modification must prove two things: (1) notice of the change; and, (2) acceptance of the change.

711 S.W.2d 227, 229 (Tex.1986) (emphasis added). In sum, the contention that the at-will nature of Jebbia's employment prevented the arbitration agreement from being enforceable, or that no contract was formed, is *without merit.*

## B. Enforceability under the Federal Arbitration Act

■■■ Abbott's affidavit states that the Federal Arbitration Act ("FAA") is intended to apply to the agreement to arbitrate, and Tex–Pack claims its right to arbitrate under that act. Jebbia claims he is exempt from the FAA. Section one of the FAA states, "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

■■■ Public policy strongly favors arbitration. *See Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). To compel arbitration, however, a party must first prove there is an agreement to arbitrate. *See Freis,* 877 S.W.2d at 284 (mandamus ·available when case sent to arbitration without agreement to arbitrate). If it cannot prove this as a matter of law, it must seek an evidentiary hearing to compel arbitration. *See Jack B. Anglin Co.,* 842 S.W.2d at 269; *Brozo,* 865 S.W.2d at 511 (Tex.App.—Corpus Christi 1993) (holding summary judgment standards must be met before presumption of arbitrability applies). Abbott's affidavit indicates that the business of Tex–Pack was transportation, the business involved interstate transportation of goods, and that Jebbia participated in the transportation process by working on the loading dock. This raises issues about the procedural enforceability of the agreement under the FAA, and Tex–Pack's summary proof does not include any evidence that resolves those issues, such as evidence the goods for which Jebbia facilitated transportation were not the goods en route from outside the state to someone located in the state who had ordered them, and the goods were not en route to a location outside the state. *See Weekley Homes, Inc. v. Jennings,* 936 S.W.2d 16, 18 (Tex.App.—San Antonio 1996, writ denied). Abbott's affidavit, especially in combination with Jebbia's affidavit stating he sometimes made deliveries, raises a fact issue about whether Jebbia was involved in interstate transportation of goods. Accordingly, the trial court could not send the case to arbitration on the evidence before it, without first holding an evidentiary hearing. *See Jack B. Anglin Co.,* 842 S.W.2d at 269.

## IV.

### CONCLUSION

Since the evidence regarding the right to arbitrate is not fully developed, nothing in this opinion should be understood to finally determine any fact. When the trial court compelled arbitration with issues of material fact outstanding about whether the agreement to arbitrate was enforceable, it abused its discretion. *See Walker*, 827 S.W.2d at 840. We realize that the summary proceeding the legislature mandated forces the trial court to decide incisively whether there is an issue of material fact, when denying summary judgment is usually an incidental ruling not subject to appellate review. *See Abor v. Black*, 695 S.W.2d 564, 566 (Tex.1985). The court must choose promptly between the right to arbitrate without further litigation and the right to litigate at least through an evidentiary hearing. If judges choose incorrectly, they must face claims that they abused their discretion. However, the policy behind arbitration, and the extremely important rights either to access the courts—or to avoid the courts—merit this accountability. We trust the trial court will follow the law as set forth in this opinion, vacate his summary order compelling arbitration, and allow Jebbia an evidentiary hearing. A writ shall issue only if the judge fails or refuses to vacate the order and allow an evidentiary hearing regarding the entitlement to arbitration.